UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARTHUR C. THOMAS,

                              Plaintiff,

         v.

CARL E. DUBOIS, SHERIFF OF ORANGE
COUNTY,

                              Defendant.

No. 19-CV-7533 (KMK)

OPINION & ORDER

Appearances:

Arthur C. Thomas
Goshen, NY
*Pro se Plaintiff*

Karen D. Edelman-Reyes, Esq.
New York County District Attorney's Office
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

    Pro se Plaintiff Arthur C. Thomas ("Plaintiff") brings this Action, pursuant to 42 U.S.C.

§ 1983, against Defendant Carl E. DuBois, Sheriff of Orange County ("Defendant").  Plaintiff

alleges that Defendant violated his Free Exercise Clause rights under the First Amendment

because the Orange County Correctional Facility ("OCCF") did not provide services or programs

in support of his Rastafarian religion.  (*See* Compl. 2, 5 (Dkt. No. 2).).  Before the Court is

Defendant's Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("the

Motion").  (Not. of Mot. (Dkt. No. 23.)  For the following reasons, the Motion is granted.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and a "Declaration" filed by Plaintiff shortly after the submission of his Complaint, (Decl. of Arthur C. Thomas ("Pl.'s Decl.") (Dkt. No. 15)), and are taken as true for the purpose of resolving the instant Motion.[1]

Plaintiff claims that from June 18, 2019 to August 8, 2019, while incarcerated OCCF, he was denied his constitutional right to worship due to a lack of Rastafarian services or programs offered by the facility.  (Compl. 5.)  Plaintiff acknowledges that OCCF's general policy is "to provide all inmates . . . access to religious services of the religion of their choice in the multidenominational chapel."  (*Id.*)  Moreover, he acknowledges that OCCF's "general guidelines and procedures" provide that if a chaplain or existing volunteer is "unable to conduct religious services according to the tenets of a particular faith . . . the program coordinator will be directed to seek a representative of that faith to conduct worship services."  (*Id.* at 5–6.)  However, Plaintiff alleges that "[t]here [are] no services or programs for [his] religion."  (*Id.* at 5.)

---

[1] Although courts generally consider only the complaint when deciding a motion to dismiss, when the motion addresses a pro se complaint, "it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Ceara v. Deacon*, 68 F. Supp. 3d 402, 405 (S.D.N.Y. 2014) (citation and quotation marks omitted); *see also Alsaifullah v. Furco,* No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (same); *see also Walker v. Schult,* 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion" (citation and italics omitted)); *Rodriguez v. Rodriguez,* No. 10-CV-891, 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) ("Although the [c]ourt is typically confined to the allegations contained within the four corners of the complaint, when analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained in a pro se litigant's opposition papers and other court filings." (citations and quotation marks omitted)).

On August 4, 2019, Plaintiff filed a grievance with OCCF requesting that Rastafarian services be offered and poultry meals served.  (Pl.'s Decl. ¶ 3.)  On August 12, 2019, Plaintiff's grievance was reviewed and denied on the merits.  (*Id.* ¶ 4; *id.* Ex. B ("Grievance") (Dkt. No. 15 at 6).)  The grievance coordinator explained that the facility "has religious service[s] for each inmate every week in a schedule provided to [Plaintiff]" and that Plaintiff "provided no evidence to support [his] religious belief."  (*Id.*)[2]

Plaintiff brings a single cause of action, alleging that Defendant violated his First Amendment right to freely practice his religion.  (Compl. 2.)  Plaintiff claims that he incurred mental, spiritual, and physical damages as a result of this alleged violation, including that he suffers from depression.  (*Id.* at 6.)  Plaintiff seeks $1,000,000 in damages and an order compelling OCCF to "honor [his] rights and religion."  (*Id.*)

B.  Procedural Background

Plaintiff filed the Complaint and a request to proceed in forma pauperis ("IFP") on August 12, 2019.  (Dkt. Nos. 1–2.)  On August 27, 2019, Chief Judge Colleen McMahon granted Plaintiff's IFP request.  (Dkt. No. 6.)  On August 29, 2019, the Court issued an Order of Service, directing service on Defendant.  (Order of Service (Dkt. No. 8).)  On October 21, 2019, Plaintiff requested pro bono counsel.  (Dkt. No. 12.)  On November 6, 2019, the Court denied Plaintiff's request without prejudice.  (Dkt. No. 14.)  On November 18, 2019, Plaintiff filed a Declaration with exhibits, further explaining the factual and legal basis for his claim.  (*See generally* Pl.'s Decl.)

---

[2] Although the Court assumes all facts in the Complaint, including the sincerity of Plaintiff's religious beliefs, to be true, the Court notes Defendant's assertion that "upon entry into the OCCF on June 18, 2019, Plaintiff professed to be Baptist.  Then on August 6, 2019, Plaintiff requested to receive the Rastafarian diet.  By August 12, 2019[,] Plaintiff requested a regular diet again."  (Def.'s Mem. 10 n.1.)

On December 16, 2019, Defendant filed a letter with the Court requesting a pre-motion conference in anticipation of moving to dismiss.  (Dkt. No. 20.)  The Court thereafter set a briefing schedule.  (Dkt. No. 21.)  On January 30, 2020, Defendant filed the instant Motion and accompanying papers, and served the same on Plaintiff.  (Not. of Mot; Decl. of Karen Edelman-Reyes, Esq. ("Edelman-Reyes Decl.") (Dkt. No. 24); Mem. of Law in Supp. of Mot. ("Def.'s Mem.") (Dkt. No. 25); Certificate of Service (Dkt. No. 27).)  Plaintiff never filed a response.  On March 20, 2020, Defendant filed a Reply Affirmation noting Plaintiff's failure to file a response to the Motion or seek an extension to do so.  (Dkt. No. 29.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alterations, and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id*. (citation, alteration, and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id*. at 563 (citation omitted), and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id*.

at 570, if a plaintiff has not "nudged [his or her] claim[ ] across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (citation and quotation marks omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court ... draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[ ] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*,

517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

 B.  Analysis

Defendants claim that the Complaint should be dismissed because it fails to comply with Rule 8's pleading requirements, fails to sufficiently allege the personal involvement of Defendant, fails to state a claim under the First Amendment or the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), fails to state a *Monell* claim, and because Defendant is entitled to qualified immunity.  (*See generally* Def.'s Mem. 1.)  The Court discusses these arguments only to the extent necessary to resolve the Motion.

 1.  Personal Involvement

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted).  To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."

*Id*. at 139 (citations, alterations, and italics omitted).  In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL

365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[ ] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*); *see also Green v. Garcia*, No. 18-CV-1745, 2020 WL 1467359, at *4–5 (S.D.N.Y. Mar. 25, 2020) (dismissing an action because the plaintiff failed to offer any facts suggesting the defendants' involvement in the alleged violations).

Here, Plaintiff does not allege that Defendant was in any way personally involved in the alleged deprivation of Rastafarian services or programs, or that Defendant was even aware of his request for more Rastafarian programming.  Indeed, Plaintiff does not even mention Defendant in the body of the Complaint.  Accordingly, there can be no inference of Defendant's personal involvement in any alleged constitutional violation.  *See Moore v. Westchester County*, No. 18-CV-7782, 2019 WL 3889859, at *5 (S.D.N.Y. Aug. 19, 2019) (explaining that "personal involvement is not established where the defendant's name appears only in the caption of the complaint" (citation omitted)); *Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *3 (S.D.N.Y. July 25, 2014) (dismissing the plaintiff's § 1983 claims against certain defendants whose names appeared only in the caption of the complaint and on the list of all defendants); *Shepherd v. Fisher*, No. 08-CV-9297, 2011 WL 3278966, at *4 (S.D.N.Y. July 27, 2011) (finding no personal involvement where the complaint did not allege that the defendant "was directly responsible for the provision of religious meals . . . or played any other role in the alleged deprivation").  Plaintiff's claims against Defendant in his individual capacity are therefore dismissed.

### 2. *Monell* Claim

Insofar as Plaintiff intended to pursue claims against Defendant in his official capacity, such claims fail because Plaintiff has failed to adequately allege municipal liability.

7

"[S]uits against officers in their official capacity are directed at the office itself."

*Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018) (citation, alteration, and quotation marks

omitted). Accordingly, if Plaintiff's claims are liberally construed as official capacity claims,

such claims are functionally directed against Orange County, the relevant municipal entity. *See*

*Moore*, 2019 WL 3889859, at *4 (construing official capacity claims against jail officials as

claims against the municipality). However, "Congress did not intend municipalities to be held

liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a

constitutional tort." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *see*

*also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may

not be liable under § 1983 "by application of the doctrine of respondeat superior" (citation and

italics omitted)). Thus, "to prevail on a claim against a municipality under [§] 1983 based on

acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2)

deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an

official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*,

542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–91). A plaintiff may satisfy the

fifth element by alleging that one of the following categories applies:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that
> caused the particular deprivation in question; (3) a practice so consistent and
> widespread that, although not expressly authorized, constitutes a custom or usage
> of which a supervising policy-maker must have been aware; or (4) a failure by
> policymakers to provide adequate training or supervision to subordinates to such
> an extent that it amounts to deliberate indifference to the rights of those who come
> into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted);

*see also Galgano v. County of Putnam*, No. 16-CV-3572, 2019 WL 2235891, at *2 (S.D.N.Y.

May 16, 2019) (quoting the same).

Here, Plaintiff's factual allegations are insufficient to support a claim under these legal standards. Insofar as Plaintiff intends to bring a *Monell* claim based on OCCF's "General Guidelines and Procedures," the claim fails because it is the "antithesis of a *Monell* claim." *Adams v. Orange County of New York*, No. 13-CV-8549, 2014 WL 6646042, at *4 (S.D.N.Y. Nov. 12, 2014) (citations omitted). As Plaintiff readily acknowledges, OCCF's general policy is "to provide all inmates . . . access to religious services of the religion of their choice in the multidenominational chapel," and to "seek and recruit a representative of [an inmate's] faith to conduct worship services." (Compl. 5–6.) Accordingly, the gravamen of Plaintiff's allegations is not that OCCF policies were improper, but that OCCF personnel failed to follow those policies in failing to provide Rastafarian worship services. In other words, any violation of Plaintiff's constitutional rights was caused by the *failure* to follow a policy, not the policy itself. By definition, such allegations fail to state a claim under *Monell*. *See Walker v. Shaw*, No. 08-CV-10043, 2010 WL 2541711, at *7 (S.D.N.Y. June 23, 2010) (explaining that an alleged failure to follow a policy "is the antithesis of a link between policy and action"); *Overhoff v. Ginsburg Dev., L.L.C.*, 143 F. Supp. 2d 379, 389 (S.D.N.Y. 2001) (dismissing a claim "that existing Village policies were not enforced" as "the antithesis of a *Monell* claim"). Moreover, in the body of his Complaint, Plaintiff fails to so much as mention any policy-maker or municipal practice that may contributed have contributed to the alleged violation. Accordingly, there is no basis for *Monell* liability, and any official capacity claim must be dismissed. *Jackson v. Westchester County*, No. 18-CV-7207, 2019 WL 3338020, at *4 (S.D.N.Y. July 25, 2019) (dismissing official capacity claims where plaintiff failed to allege facts suggesting that a municipal policy or custom contributed to the alleged violation); *see also McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing

*Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation).

### III.  Conclusion

For the reasons stated above, Defendant's Motion To Dismiss is granted.  Because this is the first adjudication of Plaintiff's claims, the dismissal is without prejudice.  Plaintiff may file an amended complaint with the Court within 30 days of the date of this Opinion & Order. Plaintiff should include within that amended complaint all changes to correct the deficiencies identified in this Opinion & Order that Plaintiff wishes the Court to consider.  Plaintiff is further advised that the amended complaint will completely replace, not supplement, the instant Complaint.  The amended complaint must therefore contain all of the claims, defendants, and factual allegations that Plaintiffs wish the Court to consider.  If Plaintiff fails to timely file an amended complaint, the claims may be dismissed with prejudice.

SO ORDERED.

DATED:      April 30, 2020
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

10